Paul E. Danielson, Justice, dissenting. I disagree with the majority’s holdings. I would affirm the circuit court’s order because the result reached therein was compelled by both the Pulaski County Circuit Court’s orders in Wright v. Smith, 60CV-13-2662, appeal dismissed sub nom. Smith v. Wright, 2015 Ark. 298 (per curiam), and by the United States Supreme Court’s decision in Obergefell v. Hodges, — U.S. -, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015). First, the Pulaski County Circuit Court in Wñght entered a permanent injunction enjoining all defendants in that ease, which included Smith, from enforcing any state or local laws or regulations that denied same-sex married couples “the rights, recognition and benefits associated with marriage in the State of Arkansas.” Wright v. Smith, 60CV-13-2662 (Pulaski Cty. Cir. Ct. May 15, 2014). In fact, the circuit court explicitly granted “all” of the injunctive relief requested by the plaintiffs in Wright, including requiring Smith and his successors in office to issue birth certificates for children born to same-sex marriages reflecting both names of the married parents. See id. The majority’s statement that the Wright injunction had nothing to do with birth certificates is simply and demonstrably wrong. And because this court dismissed as moot the appeal in Smith v. Wright, 2015 Ark. 298, the injunction stands to this day. This issue was actually litigated in Wright and was determined by a valid and final judgment; accordingly, relitigation of Lathe same issue in the instant case is barred by collateral estoppel, the issue-preclusion facet of res judicata. See, e.g., Graham v. Cawthorn, 2013 Ark. 160, 427 S.W.3d 34. I note Smith’s argument that the Wright injunction failed to meet the specificity requirement of Arkansas Rule of Civil Procedure 65(d) and (e) (2016). However, as the circuit court pointed out, that argument is a collateral attack on the judgment. See Rose v. Harbor E., Inc., 2013 Ark. 496, 430 S.W.3d 773 (citing Hooper v. Wist, 138 Ark. 289, 211 S.W. 143 (1919)) (stating that a collateral attack upon a judgment has been defined to mean any proceeding in which the integrity of a judgment is challenged, except those made in the action wherein the judgment is rendered, or by appeal, and except suits brought to obtain decrees declaring judgments to be void ab initio). Judgments may not be collaterally attacked unless the judgment is void on the face of the record or the issuing court did not have proper jurisdiction. See id. Smith’s remedy for any purported failure of specificity in the Wright orders was an appeal. Second, the United States Supreme Court held in Obergefell that states are not free to deny same-sex couples “the constellation of benefits that the States have linked to marriage.” — U.S. -, 135 S.Ct. at 2601. Importantly, the Court listed “birth and death certificates” specifically as one of those benefits attached to marital status. Id. Thus, the majority is clearly wrong in holding that Obergefell has no application here. Indeed, one of the cases on review in Obergefell, Tanco v. Haslam, 7 F.Supp.3d 759 (M.D. Tenn. 2014), rev’d sub nom. DeBoer v. Snyder, 772 F.3d 388 (6th Cir. 2014), involved a same-sex married couple who challenged the Tennessee law providing that their child’s nonbiological parent would not be recognized as the child’s parent, which affected various | ¡alega! rights that included the child’s right to Social Security survivor benefits, the nonbiological parent’s right -to hospital visitation, and the nonbiological parent’s right to make medical decisions for the child. Furthermore, one of the four principles discussed by the Court in Obergefell, for purposes of demonstrating that the-reasons marriage is fundamental under the Constitution apply with equal force to same-sex couples, is that the right to marry- “safeguards children and families and thus draws meaning from related rights of childrearing, procreation, and education.” — U.S. -, 135 S.Ct. at 2600. The opinion makes clear that the protection of children and the stability of the family unit was a foundation for the Court’s decision: Under the laws of the several States, some of marriage’s protections for children and families are material. But marriage also confers more profound benefits. By giving recognition and legal structure to their parents’ relationship, marriage allows children “to understand the integrity and closeness of their own family and its concord with other famines in their community and in their daily lives.” Marriage also affords the permanency and stability important to children’s best interests — [[Image here]] Excluding same-sex couples from . marriage • thus conflicts with a central premise of the right to marry. -Without the recognition, stability, and predictability marriage offers, their children suffer the stigma of knowing their families are somehow lesser. They also suffer the significant material costs of being raised by unmarried parents, relegated through no fault of their own to a more difficult and uncertain family life. The marriage laws at issue here thus harm and humiliate the children of same-sex couples. Obergefell, — U.S. -, 135 S.Ct. at 2600-01 (internal citations omitted). The majority errs in suggesting that the right to be named as a parent on a birth certificate is not a benefit associated with marriage and likewise errs in holding that the specific statutes at issue here focus on biological relationships rather than marital ones. |SfiArkansas Code Annotated section 20-18-401(0 (Repl. 2014) provides that the name of the “husband” of the mother shall be entered on a birth certificate as the father of the child, without regard to any biological relationship and on the sole basis of his marriage to the mother—specifically, if he is married to the mother at the time of either conception or birth or between conception and birth. The obvious reason for this is to legitimate children whenever possible, even when biological ties do not .exist. Thus, there can be no reasonable dispute that the inclusion of a parent’s name on a child’s birth certificate is a benefit associated with and flowing from marriage. Obergefell requires that this benefit be accorded to same-sex spouses and opposite-sex spouses with equal force. Additionally, I dissent from the majority’s decision to admonish the circuit judge for his critical comments. As the Supreme Court of the United States has recognized, a major purpose of the First Amendment is to “protect the free discussion of governmental affairs.” Landmark Commc’ns, Inc. v. Virginia, 435 U.S. 829, 838, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978) (quoting Mills v. Alabama, 384 U.S. 214, 218, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966)). This includes discussion of “[t]he operations of the courts and the judicial conduct of judges,” which are “matters of utmost public concern.” Id. at 839, 98 S.Ct. 1535. Injury to official reputation is an insufficient reason for repressing speech that is otherwise free, and speech1 cannot be punished when the purpose is simply “to protect the court as a mystical entity or the judges as individuals or as anointed priests set apart from the community and spared the criticism to which in a democracy other public servants are exposed.” Id. at 842, 98 S.Ct. 1535 (quoting Bridges v. California, 314 U.S. 252, 292, 62 S.Ct. 190, 86 L.Ed. 192 (1941) (Frankfurter, J., dissenting)). In the words of Justice Frankfurter, Judges as persons, or courts as institutions, are entitled to no greater immunity from criticism than other persons or institutions. Just because the holders of judicial | ayoffice are identified with the interests of justice they may forget their common human frailties and fallibilities. There have sometimes been martinets upon the bench as there have also been pompous wielders of authority who have used the paraphernalia of power in support of what they called their dignity. Therefore judges must be kept mindful of their limitations and of their ultimate public responsibility by a vigorous stream of criticism expressed with candor however blunt. Bridges, 314 U.S. at 289, 62 S.Ct. 190 (Frankfurter, J., dissenting). Moreover, the Court has cautioned against repressing speech under the guise of promoting public confidence in the integrity of the judiciary: The assumption that respect for the judiciary can be won by shielding judges from published criticism wrongly appraises the character of American public opinion. For it is a prized American privilege to speak one’s mind, although not always with perfect good taste, on all public institutions. And an enforced silence, however limited, solely in the name of preserving the dignity of the bench, would probably engender resentment, suspicion, and contempt much more than it would enhance respect. Bridges, 314 U.S. at 270-71, 62 S.Ct. 190 (footnote omitted). In short, the fact that members of this court have personally taken offense to the circuit judge’s remarks is not a sufficient basis for suggesting that those remarks violate our disciplinary rules. For these reasons, I dissent.